It is Kelvin Hunter v. Debmar-Mercury. It's number 241229. Thank you, Kyra. Thank you so much. Give us one second while I'm going to churn on this course here. Okay. Attorney Jay. Good morning, Your Honors. May it please the Court. William Jay from Goodwin Proctor for the appellants. The statutory term, marital status, carries its common understanding. That common understanding has been settled in New York State for a long time. And McCabe, the recent decision of the Court of Appeals, makes absolutely clear that neither the 2005 nor the 2016 amendment has unsettled that. We think that the decision in McCabe certainly has caused us to withdraw the suggestion that the Court might certify it to the New York Court of Appeals. We think it's sufficiently clear at this point that the only thing that gave the district court pause, the decision of the appellate division in Morse, is incorrect. This Court shouldn't rely on it in making its eerie prediction about what the New York Court of Appeals would do because it's now clear what the New York Court of Appeals would do. One of the things about McCabe that interested me is I didn't find any discussion of Morse in McCabe. I wouldn't say discussion. It is cited. Okay. And it certainly is acknowledged. It's also discussed more extensively in Judge Rivera's dissent. But you're right that there is not a sense— It doesn't explicitly say Morse is bad law. It doesn't. You have to infer that from the fact that the dissent— Well, I would say it's more than just the fact that the dissent relied on it. It is the reasoning that is expressed in McCabe. So the reasoning of Morse is, for example, that all precedent decided before the amendments is bad law. That's rejected both in Russell and in McCabe. And that the text is not— The reasoning of Morse is also that you don't start with the text. You start with this broad understanding. And the reasoning of McCabe also accepts a number of the structural points that we've made in our brief about how you see not just the term marital status but how it sits in context with the city council's addition of partnership status as an additional protected class in 2005. And our friends on the other side, I think, don't disagree with any of the description that we've given in our reply brief of McCabe. In their letter, they've given three reasons not to treat McCabe as dispositive here. One is the idea that that's a housing case, this is an employment case. I think if you look at the passage at the end of Part III of McCabe, you'll see that that can't be reconciled with how the majority responded to Chief Judge Wilson's dissent in that case, saying that marital status is used throughout the statute and it's got to have the same meaning throughout the statute. And there are other distinctions, I think, are factual ones that don't really go to what the ordinary meaning of marital status is or how the 2005 or 2016 amendments are to be interpreted. The Court of Appeals said in McCabe that it follows the city council's instruction to do liberal construction, but ultimately, the interpretation still has to be grounded in the text and the structure and the textual meaning of marital status itself. It's funny, you've gone on quite well, but you haven't said what the problem is here. What the issue is. That is, the issue has to do with the word marriage and so on and so forth. You might at least state what it is. You're kind of starting halfway through, assuming that we know all of that. Maybe that would be helpful. No, I take that point, Your Honor. The district court certified this case for appeal because the one issue that is outcome determinative is whether pleading a claim that says the plaintiff was dismissed because of his marital status to the show's host, Wendy Williams, whether that states a claim under the city law. We think under the correct reading, it does not. And I suspect that if the district court had had the benefit of McCabe, we wouldn't be here because the district court would have come out the other way. I think footnote 5 suggests that. Absolutely tangential, but I understand Ms. Williams has been in the news recently. She's been ill or passed away, but I've seen things about her and her program that's really quite up to date. Are you aware of that? I'm aware of the news coverage of Ms. Williams. I'm not sure what else I can say. Go ahead. Ultimately, the question is whether this is a cognizable claim for marital status discrimination. The issue is whether that's what marital status means. Right, exactly. The status of being married to a particular person. In other words, I was fired because you don't like my spouse, you already employ my spouse, or I'm no longer married to my former spouse. Those are not cognizable claims. As the McCabe court made clear, this was added to the city law in response to the problem of landlords saying things like, I will not rent to single people, or the Village of Spencerport case that we've cited in our brief discusses the problem of employers who are unwilling to employ, in some instances, married women, in some instances, unmarried women, based on different sets of stereotypes. But that's the historical basis for this being added to both the state law and the city law. Can I ask about what you think our decretal language should look like if we agree with you? I think that you can simply say the decision of the district court is reversed. I don't think that there is a need to remand. The district court made clear in assessing the 1292B factors, and I think this is at page 254 of the appendix, that reversing on this legal question would end this case in its entirety. Why wouldn't we ask the parties to brief this and let the district court decide on what the appropriate meaning of McCabe was in the first instance? I understand the question, and in some instances, like in Golden, sorry, I'm forgetting the name, one of the cases in which this court withdrew its certification to the New York Court of Appeals, it did do something like that. Ultimately, what I would say is we already know what the district court would do if it thought the law were otherwise, in other words, if it thought Morse were wrong. There's no suggestion in any of the briefing that the other side would try to amend or pursue a different theory, and ultimately, it is a pure legal question on which I don't think you need the district court to render a decision. It might be different if you were asking the district court to apply the law to the facts here, but I think the statement in the 1292B certificate makes clear that the district court thinks this is an outcome dispositive. This is kind of a weedy question, though, but since we have it on interlocutory review, if we agree, would it be procedurally proper for us to go ahead and essentially enter a final judgment, or would that be something that would need to go back to the district court because of the fact of the interlocutory review? I understand the question, and I think that in some cases, there might be some question of whether there is anything left to do in the case, but ultimately, this is a 12B6 motion, and the district court said that motion is denied, and if this court says that motion should have been granted, then the only question is, was there anything left to do? This court obviously has a number of cases about leave to amend and so forth, and I guess all I can say is that neither in the pre-motion letter briefing nor at the pre-motion conference nor in the 1292B briefing has there been any suggestion that there's anything left to do once the legal question is settled. If that's true, then we do not remand? That's what we're suggesting, yes, Your Honor. My answer to your question. It's possible that what we do for procedural regularity is to send it back with instructions to dismiss. I'm just trying to be sure that's not the way we proceed in this case. I don't see a real difference between either of those decretal languages. We're lawyers and judges. Real differences sometimes don't matter. I agree with that entirely. I think there's no substantive difference between reversed and remanded with instructions to dismiss, and my friend on the other side may be able to answer the question whether there would be anything left to do. Thank you. With that, why don't we hear from you again in a few minutes and hear from Attorney Edelstein. Good morning, Your Honors. May it please the Court, Jonathan Edelstein for the appellee, Kelvin Hunter. If the Court will indulge me for one moment before I get to McCabe, I agree with opposing counsel that this is an issue of pure law. The facts are undisputed. Mr. Hunter was a stellar producer of the Wendy Williams show for more than a decade. He built the show. There were no complaints about him until his divorce with Ms. Williams was announced. A week later, he's fired without any explanation, and no other explanation has ever been given. The facts are as blatant as they come, and I think that makes Mr. Hunter a poster child for why marital status discrimination should include marital status with respect to a particular person. With that, we do acknowledge the McCabe decision, but I would submit that the McCabe decision is not 100% dispositive because not only are there the distinctions that we've drawn in our written submission, but it doesn't appear that the New York Court of Appeals in McCabe was presented with all of the arguments that we made to the district court and to this court in the pre-McCabe briefing, specifically including then-Councilman Brad Landers' statement as a sponsor of the 2016 Reform Act, which explicitly called out marital status as one of the things that the city council wanted the courts to make a maximally protective interpretation of. And I think that there is still an issue of whether, you know, especially since the McCabe majority didn't directly address Morse, I think there's still an issue as to what, in the opposing council's words, following the city council's instruction really entails in this instance, and possibly a certification to the Court of Appeals might still be appropriate. The Court of Appeals— Would you, though—I'm sorry, if I may—wouldn't that call for a minimum of vacate and remand? Like, if you think that there is some room for your client to still prevail under McCabe because there were issues not presented, it could be distinguished, is that the appropriate step? I mean, do you dispute that that is the best you could hope for given the uncertainty counted by McCabe, or uncertainty for your initial position? Well, I would submit that the most—oh, I apologize, Your Honor, if I was interrupting. I would submit that the most appropriate step is not—would not be a remand to the district court, but a certification to the New York Court of Appeals. As I know from experience, I've litigated a number of cases in that court. The New York Court has an expedited briefing and decision procedure under 22 NYCRR 500.11, where issues can be submitted to the court and determined by means of letter briefs, usually resulting— Okay, I'm sorry. So what would that mean, though, for us, that we would be the ones saying McCabe isn't— Does it answer the question in front of us? That, to me, seems a little bit different than how do we interpret McCabe. Well, I think it would be this court asking the Court of Appeals to determine whether McCabe is dispositive of the situation in front of us. So if McCabe on its face seems clearly dispositive, but your argument is, ah, but there's arguments that the court didn't consider in McCabe. So you're not arguing that this case is distinguishable or beyond the scope of McCabe as I understand it. You're arguing that perhaps if presented with this additional argument about the one statement in the 2016 City Council about the desire for marital status to be interpreted more broadly, if the Court of Appeals only knew that, perhaps they would come out differently, really, in McCabe itself, right? Well, I would submit that that's pretty central to the issue in McCabe, whether, you know, if the City Council explicitly said, we want marital status to be interpreted broadly, which would signify that it wanted a broader interpretation of marital status than had been used by the courts before 2016. That seems pretty central to the issue that was at bar both in the McCabe case and this case. You are saying that there's something about this case that on its facts might not fall within the four corners of McCabe. You're really saying, gosh, there's an argument that the court really failed to grapple with in McCabe. And so if you're trying to picture what our opinion certifying looks like, because usually when we certify, we explain what the reason is that we're asking them to. And I'm thinking particularly where they've just issued a decision addressing the question before us, a reason that we would explain to them why we would be referring it is because we would say, we know you held that in McCabe that marital status is an individual status thing, not a relational thing to another person. But counsel, in this case, has presented us with arguments that we see you failed to address in maybe weren't presented to you in McCabe. In light of those, do you still hold the view that you articulated in McCabe? Is that what it would look like? I think it might look something like that, that, you know, whether certified question of law as to whether McCabe is applicable to the facts of this case, If we did that, wouldn't we be certifying left and right every day? Well, certainly I know this Court has cautioned against overuse of the certification procedure, but this is an issue that has been addressed in relatively few cases. There was a very emphatic decision in Morse, which the McCabe case did not directly address. And we have, in our written submissions, made a number of factual distinctions from McCabe, not only that it's the employment context, but also that this case involved the dissolution of an existing marital relationship rather than a plaintiff saying she had some kind of inchoate marital relationship. And also the fact that in McCabe, the plaintiff was given an alternative means to qualify, whereas in this case, Mr. Hunter was just fired. They let him go. And there's never been any other explanation of why they let him go than the fact that he, his divorce to Ms. Williams was announced. So I think that there is some space here, given that this is a still developing area of law, to certify to the Court of Appeals a question regarding the scope of McCabe. Does it apply in the employment context? Does it apply where there has been the firing is blatantly based on the severance of an actually existing marital relationship in light of Councilman Landers' remarks during the debates on the 2016 Reform Act? Can I, in terms of asking them whether it applies in the employment context, of course there was an argument sort of run in the other direction in front of the McCabe court, trying to invoke some employment law principles. And the court specifically says it would be quite unusual for the legislature to use the same words in the same statute, but intend for them to have different meanings. Wouldn't it be sort of odd for us to ask them that question again when they've just answered it? Well, I think that there is evidence. Again, I don't want to be a broken record about Councilman Lander, but there is evidence that the City Council did intend for marital status to have different meanings. Plus, in the Morse case and then in the Carriorgo case, both in the First Department, it was interpreted that way specifically in the employment context. So maybe in this context there is room for different meanings in different places. If the court has no further questions, I'll rest on the briefing. Thank you. Appreciate your arguments. Attorney Jay? I'll be very brief unless the court has questions for me. Just to note a couple of things. One about certification. Our friend is certainly right that briefing can be streamlined in certification, but it can still take a long time. I think in Said it took 14 months between this court's certification order and when the Court of Appeals decided the case. And then on the question whether the Lander comments from 2016 leave enough ambiguity for this court to certify to the Court of Appeals, I would just note that at page 6 of McCabe, which is also the spot, Judge Robinson, where Morse is discussed, the court goes through the statements made in the 2005 legislative history by individual members and says that they're not sufficient to detract from the precedent on that point. Unless the court has any further questions? No, thank you. We appreciate your arguments. We'll take it under advisement. Thank you very much.